19057

Frank FERGUSON, Respondent, v. EMPLOYERS MUTUAL CASUALTY COMPANY, Appellant.

(174 S. E. (2d) 768)

*Messrs. W. Francis Marion,* and *William M. Grant, Jr.,* of Greenville, *for Appellant,*

*Kenneth C. Porter, Esq.,* of Greenville, *for Respondent,* cites:

*Messrs. W. Francis Marion,* and *William M. Grant, Jr.,* of Greenville, *for Appellant, in Reply,*

May 26, 1970.

Moss, Chief Justice.

It appears from the record that C. C. Corbett, Sr., was the owner of a Ford pickup truck and that on August 1, 1967, the said truck, while being operated by one David Watson, his employee, collided with a truck owned by one Frank Ferguson, the respondent herein. Thereafter, the said respondent obtained a default judgment on November 11, 1967, against C. C. Corbett and David Watson in the amount of $7,000.00 for property damage sustained.

The present action was commenced by the respondent against Employers Mutual Casualty Company, the appellant herein, to enforce the payment of said judgment to the extent of $5,000.00, under a policy of liability insurance issued by it on April 21, 1967, to the said C. C. Corbett, Sr., pursuant to the Assigned Risk Plan of the State of North Carolina.

The appellant, by answer, denied that the policy provided coverage and alleged that such had been rescinded as of the date of its inception. As a further defense, the appellant alleged that misrepresentations were made in the application by the insured as to the state of licensing and registering and place of principal garaging as to the truck covered

in said policy, which were material to the risk and willfuly made. As a further defense, the appellant alleged that the policy was issued pursuant to the Assigned Risk Plan of the State of North Carolina, and that the insured was not a resident of North Carolina at the time of the application for insurance and the Plan was not available to him. The appellant demands that the complaint of the respondent be dismissed and that the court rescind and declare null and void the contract of insurance.

By agreement, this case was tried before The Honorable James H. Price, Jr., Judge of the Greenville County Court, without a jury. After hearing the testimony, the trial judge filed an order holding that the policy issued by the appellant was in full force and effect at the time of the collision between the trucks of the respondent and C. C. Corbett, Sr., and that the policy in question provided coverage to the said Corbett. This appeal followed.

The first question for decision is whether the policy in question was void *ab initio* for the reason that it was issued to one not a resident of North Carolina and afforded coverage to a vehicle not registered and garaged in North Carolina; hence, not entitled to coverage under the North Carolina Assigned Risk Plan. The appellant urges that it was error for the trial judge to find that C. C. Corbett, Sr., was a resident of North Carolina at the time of the issuance of its policy.

The North Carolina Assigned Risk Plan was set up under the provisions of Section 20-279.34 of the General Statutes of said State. This section provides *inter alia,* as follows:

"The provisions of this article relevant to assignment of risks shall be available to nonresidents who are unable to obtain a motor vehicle liability insurance policy with respect only to motor vehicles registered and used in this State."

The question of a person's place of residence is largely one of intent to be determined under the facts and circumstances of each case. The act and intent

as to domicile, not the duration of the residence, are the determining factors. *Miller v. Miller,* 248 S. C. 125, 149 S. E. (2d) 336. The finding of the trial judge is conclusive thereon unless there is a total failure of testimony to support it. *St. Clair v. St. Clair,* 175 S. C. 83, 178 S. E. 493. In the case of *Reynolds v. Lloyd Cotton Mills,* 177 N. C. 412, 99 S. E. 240, 5 A. L. R. 284, it was held:

"To effect a change of residence or domicile, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a [permanent] home."

The insured testified that he was a resident of Tabor City, North Carolina, during the first few months of 1967, and at the time of the application for and the issuance of the liability policy covering the truck in question. He said he maintained an office in Tabor City for the purpose of selling canned vegetables, fruit and fresh produce. He had maintained such office for twelve or fourteen years prior to the issuance of the policy. In 1963 he purchased a peach farm in Spartanburg County, South Carolina, and during the years 1964-1966 he and his wife lived in a rented house near the farm and supervised the operation thereof during the peach growing season and on other occasions during the years. He testified that he went on business trips which involved a few days or a week and at the end of such trips he returned to the house in Spartanburg County in which he and his wife were living. He further stated in his testimony that he spent his time between Spartanburg, South Carolina, and Tabor City, North Carolina, there living in the home of his daughter where a room was kept for his occupancy. He further testified that he had taxable property in both the states of North Carolina and South Carolina. He admitted that a cannery owned by him was destroyed by fire in 1965 and was never rebuilt. This cannery was located just across

the line from Tabor City in South Carolina, but he testified that he continued to handle all of his sales operation through his Tabor City office under the name of "Corbett Sales Company." There was also evidence that Corbett had registered in January 1968 to vote as a citizen of South Carolina.

The insured testified that he had a foreman to supervise his peach orchard operation in Spartanburg County. He said that he had a canning operation in Louisiana and that he traveled between Pauline, Louisiana, Tabor City, North Carolina, and other parts of the country selling his products. He said that he owned two Pontiac automobiles and such were principally garaged in Tabor City, North Carolina and they were used to travel all over the country in connection with his sales operation. There is also testimony that the insured sold all of his property in Spartanburg County in the year 1968 and moved to Myrtle Beach, South Carolina.

Several witnesses for the appellant testified that the insured owned a peach orchard in Spartanburg County and supervised the business operation thereof and they had observed his presence in South Carolina. These witnesses also testified that the insured and his wife lived near the peach orchard in a rented house.

The testimony of the agent who took the application concerning the residency of the insured at the time of the issuance of the policy was that he had his home in Tabor City, North Carolina, and that he was in Spartanburg part of the time and in Tabor City part of the time.

The question as to the place of residence of the insured was one of fact. The trial judge found as a fact that the insured, at the time of the application for and the issuance of the policy here, was a resident of the State of North Carolina. There is evidentiary support for this finding and we are without authority to disturb such. It follows that the trial judge was correct in holding that the

Assigned Risk Plan of North Carolina was applicable to the insured.

The other question for decision is whether the appellant had the right to void a policy from its inception on the ground that it had been obtained through misrepresentations by the insured.

The appellant asserts that the insured misrepresented as to the state of licensing and registration and the place of principal garaging of the truck in question in his application for insurance. It is further the position of the appellant that the said misrepresentations made by the insured were material to the risk sought to be insured and had proper representations been made the policy of liability insurance would not have been issued.

Liability insurance policies issued under the Assigned Risk Plan, pursuant to the provisions of Section 20-279.34 of the General Statutes of North Carolina, are compulsory. *Allstate Insurance Company v. Hale*, 270 N. C. 195, 154 S. E. (2d) 79. The policy is also subject to the following provisions contained in Section 20-279.21 (f) (1):

"The liability of the insurance carrier with respect to the insurance required by this article shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy."

It has been held that an insurer issuing an automobile liability policy pursuant to the various statutory plans designed to protect the public against the inability to collect damages in *tort* from financially irresponsible owners or operators of motor vehicles cannot escape liability to a third party injured through the culpable operation of the vehicle insured, during and within the coverage afforded, because

of any fraud or misrepresentations relating to the inception of the policy which might have afforded the insurer a cause for rescinding, reforming, canceling *ab initio*, or otherwise avoiding, an ordinary, voluntary liability policy, so as to escape such liability. See 83 A. L. R. (2d) 1104, for the cases sustaining the foregoing statement, 46 C. J. S. Insurance § 1191, at page 123; 7 Am. Jur. (2d), Automobile Insurance, Section 9, at page 303.

The primary purpose of compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by the negligence of financially irresponsible motorists. Its purpose is not like that of ordinary liability insurance to save harmless the *tort feasor* himself. The injured person's rights against the insurer are not derived through the insured as in the case of voluntary insurance. They are statutory and become absolute on the occurrence of an injury covered by the policy. *Nationwide Mutual Ins. Co. v. Roberts,* 261 N. C. 285, 134 S. E. (2d) 654.

It is our conclusion, under the authorities cited, that the appellant might not, after an accident involving injury and damage to a third party, cancel *ab initio,* a policy issued in conformity with the North Carolina Assigned Risk Plan, although the insured falsely represented in his application as to the state of licensing and registration and the place of principal garaging of the truck in question.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.