No. 85-352

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

RONALD V. FODE,

Plaintiff and Appellant,

-vs-

FARMERS INSURANCE EXCHANGE,
a Reciprocal or Interinsurance
Exchange, organized and existing
under and by virtue of the laws
of the State of California,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Whalen & Whalen; Timothy J. Whalen argued, Billings,
Montana

For Respondent:

Crowley Law Firm; Peter F.Habein argued, Billings,
Montana

Submitted: December 9, 1985

Decided: April 25, 1986

Filed: APR 25 1986

Ethel M, Harrison
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

This is an appeal from summary judgment entered in the Thirteenth Judicial District Court in favor of defendant. We reverse and remand.

Appellant, Ronald Fode was involved in a three car accident on November 30, 1984. Respondent, Farmers Insurance insured one of the other drivers. The degrees of liability for the accident have yet to be determined.

Fode notified Farmers Insurance of the property damage he sustained. Farmers refused to settle the claim. Fode alleges that Farmers refused to settle because its investigation of the accident showed their insured was not liable, when he clearly was. Farmers Insurance alleges it was willing to settle for twenty percent of what Farmers viewed total damage to be. A letter was sent by Farmers to Fode denying any legal liability on the part of its insured and refusing to pay any part of Fode's claim. As this is an appeal from summary judgment, the factual dispute has not been resolved.

Fode asks this Court to recognize the common law duty of good faith and fair dealing without reference to the unfair claim settlement practices statute, § 33-18-201, MCA. Rather, the appellant rests his case upon obligations imposed by statute generally. Section 28-1-201, MCA, provides:

> General duty of care. Every person is bound, without contract, to abstain from injuring the person or property of another or infringing upon any of his rights.

Section 28-1-203, MCA, provides:

> Enforcement of obligations arising by operation of law. An obligation arising from operation of law may be enforced by civil action or proceeding or in the manner provided by law.

2

The Legislature recognized that certain obligations were owed by an insurer to an insured and therefore enacted § 33-18-201, MCA, which seeks to prohibit certain unfair claims practices. Generally that section compels an insurer to be prompt in handling the claim, to conduct a reasonable investigation, to deny coverage within a reasonable time, to offer a reasonable amount in settlement, and to effectuate a prompt, fair and equitable settlement once liability has become reasonably clear.

In Klaudt v. Flink (Mont. 1983), 658 P.2d 1065, 40 St.Rep. 64, this Court recognized that the obligations created under § 33-18-201, MCA, contemplated a tort remedy for their breach. This holding satisfies the mandates of general obligation imposed by § 28-1-201, MCA, and the enforcement section, 28-1-203, MCA.

Respondent argues that no obligation is owed from an insurer to a tort victim at common law, citing Marzolf v. Hoover (D.Mont. 1984), 596 F.Supp. 596. There the Federal District Court said:

> In Count III of her Amended Complaint, the plaintiff asserts the existence of a common law duty running from an insurer to a third-party claimant, a duty separate and independent from the obligation imposed upon an insurer by § 33-18-201, M.C.A. (1979). No such duty, however, exists under Montana law, and Klaudt v. Flink, supra, does not alter this conclusion. Granted, a fiduciary duty runs from the insurer to its insured by virtue of the contract of insurance extant between the two, see, Thompson v. State Farm Mutual Automobile Ins. Co., [(1973), 161 Mont. 207, 505 P.2d 423], but the only duty running from an insurer to a third-party claimant is that imposed upon the insurer by § 33-18-201, M.C.A. (1979). Accordingly, I find that Count III of plaintiff's Amended Complaint fails to state a claim cognizable under Montana law.

The rule articulated by the Federal District Court is the general rule. However, this Court does not, in this

3

case, hold that no duties run from an insurer to a tort victim. We only decide in this case that such duties have been recognized by the Legislature in enacting § 33-18-201, MCA. The Legislature has sufficiently articulated the obligations and this Court will not interfere. Where the Legislature fails to take cognizance of important legal obligations and fails to provide the appropriate remedies, this Court will not hesitate to act. However, such is not the case in this instance.

Appellant Fode, in an effort to strengthen his argument, relies upon § 25-10-303, MCA, which provides, in part:

> In an action involving solely the recovery of property damages arising out of the ownership, maintenance, or use of a motor vehicle, in which the plaintiff secures a judgment equal to or greater than the amount of damages claimed by the plaintiff in his last written offer to the defendant or his agent prior to the filing of the cause of action, the court shall allow plaintiff's reasonable attorney's fees . . . .

The purpose of this statute is to encourage good faith negotiation. It acts, where property damages only are involved, as an additional remedy to remedies resulting from violation of obligations owed under § 33-18-201, MCA. In this action, no judgment has been obtained in the underlying case and the statute has no application.

Section 33-18-201, MCA, is limited to situations where the insurer engages in the proscribed conduct as a "general business practice". In Klaudt, supra, we recognized that multiple acts by the insurer could occur in the handling of a single claim. Therefore, the provisions of § 33-18-201, MCA, have general application and it would be confusing for the Court to recognize a separate cause of action, outside the unfair claims settlement practices procedure.

4

In this case the appellant Fode has alleged that liability is "reasonably clear" but has not alleged that the insurer's conduct constituted a "general business practice". We recognize pleadings should be liberally construed and do not require that all statutory requirements be alleged for a complaint to be good. Pleadings should be construed in the manner consistent with the spirit of modern rules of civil procedure and with an eye toward achieving justice for the parties. See Morris v. Espeland (Mont. 1985), 696 P.2d 428, 42 St.Rep. 251.

Appellant Fode may have a cause of action pursuant to the provisions of § 33-18-201, MCA. The "general business practice" provision can either be satisfied by showing specific instances of conduct on the part of the insurer which violate the mandates of § 33-18-201, MCA, or by providing expert testimony from attorneys, adjusters or others knowledgeable regarding the claims practices of the insurer. Furthermore, one need not show that liability has become "reasonably clear" to show a violation of all sections of § 33-18-201, MCA. The "reasonably clear" requirement is necessary to show a violation of subsections 6 and 13 of the statute, but other provisions may also be violated and give rise to a cause of action in tort.

We find that the appellant's allegations contained in his complaint should be presented to the District Court to determine whether a cause of action has been stated under § 33-18-201, MCA. We vacate the summary judgment entered by the District Court and remand for proceedings in conformity with the views herein expressed.

As noted previously this bad faith case is being pursued although the degrees of liability for the accident have yet

to be determined. Under the holding in Klaudt v. Flink, supr, the procedure is authorized. At the time we decided Klaudt v. Flink the majority of jurisdictions did not permit the bad faith action to proceed until the underlying action was concluded. The majority opinion stated:

> However, at this point, we must differ with the position adopted by the other jurisdictions which allow an action such as this to be prosecuted only after the insured's liability has been adjudicated. We believe that the action may be filed and tried before, concurrent with, or after liability has been determined. We see no problems with the possibility of contrary findings in the two actions, the doctrine of res judicata, collateral estoppel or the like because different issues are involved in the two cases. . .

More than three years have elapsed since our decision in Klaudt. Experience in the field teaches us that a change in procedure is necessary. The insurance company is put in a difficult position by having to defend a bad faith case before the underlying case has been determined. Discovery of the insurer's file in a bad faith case raises difficult "work product" and "attorney-client" problems affecting the underlying case. The practice also allows for undue leverage to be exerted by forcing the insurer to face the prospect of two lawsuits with the additional costs incurred for defense.

The legislature enacted the unfair trade practices section of the Montana Insurance Code to correct abuses being practiced by insurers. The undue delay of claims worked to the advantage of insurers who did not have to pay prejudgment interest and worked to the disadvantage of innocent tort victims who were forced to wait for recoupment of their loss. However, the procedural rule adopted in Klaudt unfairly works a prejudice to insurers. The system must be balanced. All

6

parties should be accorded fair and just treatment under the law.

For the foregoing reasons we hold that all proceedings in a bad faith case, alleging violations of the code which require a showing that liability be reasonably clear, are suspended until the liability issues of the underlying case have been determined either by settlement or judgment. Our holding applies to this case and all others involving the same issue.

The bad faith case may be filed to toll the statute of limitations and to expedite ultimate disposition but no discovery may be engaged. A favorable judgment for the plaintiff in the District Court is sufficient to trigger discovery in the bad faith case. Plaintiff need not await the outcome of the District Court decision on appeal.

This case is remanded to the District Court for proceedings under the unfair trade practices section of the Insurance Code. However, all proceedings are suspended until liability has been determined in the underlying case.

_____
Justice

7

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

8

Mr. Justice John C. Sheehy, dissenting:

I dissent from the majority opinion although I agree that the summary judgment entered by the District Court must be vacated.

For the purposes of this dissent, the term "third party claimant" means a person whose property has been damaged or who has received personal injuries caused by an insured driver. In this case the third party claimant is Fode. The term "insured" refers to David Michael Fiedler, the driver of the other automobile in this case. The term "insurer" refers to Farmers Insurance Exchange, which issued a policy of liability insurance to David Michael Fiedler.

At 5:00 p.m. on the afternoon of December 1, 1984, Fode was operating his vehicle in the center lane of the three lanes provided for southbound traffic on Main Street in the Billings Heights. He was driving at approximately 25 miles per hour, about 1½ car lengths behind a pickup truck operated by Fiedler. The roadway was icy, with a light cover of snow and it was just beginning to get dark. As the vehicles approached an intersection, a vehicle from the northbound lane of traffic attempted to make a left turn across the lane of traffic occupied by Fiedler, who was followed by Fode. The left turning vehicle lost control, missed the turn and stopped at the right hand curb in Fiedler's direction of travel. Fiedler swung out to the left to avoid the left turning vehicle and Fode followed suit. Fiedler, however, attempted to return to the right hand lane, lost control, skidded into the center dividing strip of Main Street, spun again and crossed to the right hand side of Main Street, where he struck the curb and the telephone pole. In that position, Fode's vehicle struck the Fiedler vehicle.

- 9 -

On December 7, 1984, Fode called Hoglum, the adjuster for Farmers Insurance Group, the insurer in this case. Hoglum informed Fode by telephone that the position of Farmers Insurance Group was that it was in no way liable to Fode for the damages to his automobile (he does not seek personal injury damages) and that he should see his lawyer. Fode's testimony is that he was always willing to negotiate away from 100% of his claim but that the insurer denied his claim in its entirety.

Fode sued the insurer claiming a breach of duty under common law on the part of the insurer to negotiate with him. The District Court did not look to whether issues of material fact existed but dismissed his claim on summary judgment, stating:

> The plaintiff's claim in this case is premised on an alleged breach of duty arising under the common law. Because the court finds that no such duty exists, there is no need to determine whether issues of material fact exist as to an alleged breach of duty. Accordingly the scope of the court's inquiry is confined to determining whether defendant Farmers Insurance Exchange is entitled to summary judgment as a matter of law.

The primary issue for us on this appeal, therefore, is whether there is a common law right of action for failure to negotiate against the insurer in this case. If such an action does exist, then certainly material issues of fact exist as to whether FIG should have negotiated with Fode prior to his commencing suit.

The majority gives no consideration to this issue raised by Fode, but looks instead to a statutory duty imposed upon insurers under § 33-18-201, MCA. In so doing, the majority moves with too much speed and too little thought given to a substantive issue of law raised by Fode, whether there exists a common law duty upon an insurer to negotiate with a third-party claimant.

- 10 -

In at least two Workers' Compensation cases, this Court has recognized a common law obligation of insurers to refrain from intentional torts and unfair practices in settlement and negotiation of claims. In Hayes v. Aetna Fire Underwriters (1980), 187 Mont. 148, 609 P.2d 257, we approved an action against an insurer for alleged intentional torts of fraud, conversion and intentional infliction of emotional distress, in spite of the exclusivity clause of the Workers' Compensation Act. Section 39-71-411, MCA. In Vigue v. Evans Products Company (1980), 187 Mont. 1, 608 P.2d 488, we again permitted a common law action against the Workers' Compensation carrier for fraud, conversion, economic duress and bad faith.

In Lipinski v. The Title Insurance Company (1982), 202 Mont. 1, 655 P.2d 970, we held expressly that insurance companies have a duty to act in good faith with their insureds and that this duty exists independently of the insurance contract and independent of statute. 202 Mont. at 15, 655 P.2d at 977. In Lipinski, we held that a title insurer breached the implied duty of good faith in failing to defend the insured's title when it was attacked.

In Weber v. Blue Cross of Montana (1982) 196 Mont. 454, 643 P.2d 198, Justice Weber stated:

> [a] cause of action may sound in tort although it arises out of a breach of contract, if a defaulting party, by breaching the contract, also breaches a duty which he owes to the other party independently of the contract.

196 Mont. at 463, 643 P.2d at 203.

Is there a basis now to find a duty on the part of the insurer to negotiate with Fode regarding his property damage independent of contract? Certainly. The duty arises out of the adoption in Montana of the mandatory insurance law. Section 61-6-301, MCA.

- 11 -

Before the adoption of the mandatory liability insurance law, a motorist whose vehicle was damaged by the driver of another insured vehicle, if the insurer was unwilling to negotiate with the third party claimant, had to sue the insured driver personally in order to establish liability and his right to the insurance proceeds from the insurer. It was unfortunately the case that many insurers, in order to force settlements or to avoid paying at all, refused to negotiate with third parties unless suit was brought by the third party for property damages. It was this unfair practice which led the legislature to the adoption of § 25-10-303, MCA, referred to in the majority opinion, which provides that if a plaintiff secures a judgment equal to or greater than the amount of property damages claimed by him, he is entitled to reasonable attorney fees.

Moreover, because the presence of insurance was a matter of grace on the part of the insured this Court and others were careful not to allow a third party plaintiff to name the insurance company as a defendant because of the possibility that the trier of fact might be prejudiced if the fact of insurance were known.

Before mandatory liability insurance, whether the owner and operator of a motor vehicle carried liability insurance was a matter of his business acumen, and the insurance policy was issued to the insured for the purpose of protecting <u>his</u> liability. After mandatory liability insurance, however, the party sought to be protected by law is <u>not</u> the insured, but the <u>injured claimant</u>. Mandatory liability insurance laws are passed by legislatures <u>to protect the general traveling public</u> by requiring all drivers to carry liability insurance.

Before mandatory liability insurance, it was assumed that jurors or other triers of fact should not know of the

- 12 -

presence of insurance and therefore the insurance company should not be mentioned in any proceedings relating to the liability action. Now, however, every juror or trier of fact must know that insurance is indeed involved because of the mandatory law. Formerly, some motorists carried liability insurance out of a sense of public duty. Now, all must carry liability insurance because of public policy.

Thus, it was stated in Ferguson v. Employers Mutual Casualty Company (S.C. 1970), 174 S.E.2d 768, 771:

> The primary purpose of compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by the negligence of financially irresponsible motorists. Its purpose is not like that of ordinary liability insurance to save harmless the tortfeasor himself. The injured person's rights against the insurer are not derived through the insured as in the case of voluntary insurance. They are statutory and become absolute on the occurrence of an injury covered by the policy.

We have upheld the constitutionality of the compulsory automobile liability insurance statutes. State of Montana v. Turk (1982), 197 Mont. 311, 643 P.2d 224.

Once we understand the true focus of the mandatory liability insurance law we can look with a different light at § 28-1-203, MCA, which provides:

> Enforcement of obligations arising by operation of law. An obligation arising from operation of law may be enforced by civil action or proceeding or in the manner provided by law.

Under § 28-1-203, MCA, a person entitled to enforce an obligation has two remedies, (1) a civil action or (2) a proceeding authorized by law. The majority in this case has confined Fode to the "manner provided by law," in § 33-18-201, MCA, without explaining why he is not also entitled to a civil action.

A second reason for my dissent is the unnumbered rule of civil procedure promulgated by the majority which halts

proceedings against an insurer in a bad faith case and suspends discovery. That the unnumbered rule is ill-advised may be shown in that it springs from no issue raised by the parties in this case, it is unbriefed and unargued, and comes like a bolt from the blue to an unsuspecting, unprepared bar. The unnumbered rule conflicts with statutes and with certain numbered Rules of Civil Procedure.

The first conflict with a statute is the adoption of the rule itself. Section 3-2-702, MCA, requires that before any rules of procedure are adopted by us they should first be considered and prepared by an advisory commission. Here the advisory commission is by-passed. The precipitous action of the majority is justified by their statement that "experience in the field teaches us that a change in procedure is necessary." The statement is unsubstantiated by reference to cases in our files or by citation to studies done elsewhere.

The unnumbered rule of the majority conflicts with the remedy adopted by the legislature in 1985 following Klaudt v. Flink, supra. Section 33-18-241, MCA, provides:

> The _trial_ of a claim or action against an insurer for _lack_ of good faith in its handling or settlement of an insurance claim may not be consolidated with a _trial_ of the underlying claim if:
>
> (1) the lack of good faith claim is against a party different for the party against whom the underlying claim is made; and
>
> (2) the parties have not stipulated to consolidation of the trial of the lack of good faith and the underlying claim. (Emphasis added.)

Thus a remedy for _Klaudt_, supra, has already been provided by the legislature. Under § 32-18-241, MCA, where a third party claim against an insured is combined with a third party claim against the insured's carrier the _trials_ of the two causes must be separated. The legislature made no such provision where an _insured sues his own carrier_ both for bad

- 14 -

faith and for the underlying obligation. But, under the rule adopted by the majority now, an insured may not proceed in the same suit against his own carrier to discovery and other proceedings until the liability portion is first determined. Thus does the majority force the insured into two trials. Under the rule adopted by the majority, the earlier cases we have decided in favor of insureds in bad faith cases, Lipinski, supra; Weber, supra, and First Security Bank v. Goddard (1979), 181 Mont. 407, 593 P.2d 1040; and others would have required two trials rather than the one trial, the decision of which came to us on appeal. It is on that basis that the unnumbered rule adopted by the majority is ill-considered and ill-advised.

The unnumbered rule conflicts with Rule 23(d), M.R.Civ.P. which gives to the District Court the power to make appropriate orders respecting the course of proceedings in cases before it; with Rule 18(a), M.R.Civ.P., which permits a party to join as many legal or equitable claims or both as he has against an opposing party; and it raises havoc with Rules 26 to 38, M.R.Civ.P., which relate to discovery.

The unnumbered rule will not wreck the tort system, of course, because the tort system is broader by far than cases against insurers. It will however, substantially increase the costs to litigants of litigation against insurers for breach of the implied covenant of good faith and fair dealing.

A third reason for my dissent is the implication in the majority opinion that a bad faith case against an insurer requires proof of a general business practice of unfair claims settlement or deceptive acts.

The holding of the federal district court in Marzolf v. Hoover (D. Mont. 1984), 596 F.Supp. 596, was incorrect when

it stated that "the only duty running from an insurer to a third party claimant is that imposed upon the insurer by § 33-18-201, MCA (1979)." The federal district court ignored, as does the majority in this case, the provisions of § 33-18-102, MCA, which establishes the duty upon insurers not to engage in even a single unfair or deceptive act or practice. That statute provides:

> No person shall engage in this state in any trade practice which is defined in this chapter as or determined pursuant to this chapter to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. (Emphasis added.)

That statute, by its terms, is limited to a single act or practice.

Section 33-18-102, MCA, is prohibitory in nature, and was enacted for the protection of the public. It has been the law of this State at least since 1912 that where a statute "makes a requirement, or prohibits a thing, for the benefit of a person or class of persons, one injured by reason of a violation of it is entitled to maintain an action against him by whose disobedience he has suffered an injury." Melville v. Butte-Balaklava Copper Co. (1913), 47 Mont. 1, 130 P. 441.

It is plain as day that a single breach of the statute constituting an unfair or deceptive act or practice by an insurer, toward an insured or a third party claimant, which causes injury, gives rise to an action against the insurer; and further, if the breach is oppressive, malicious or fraudulent, it will also give rise to a claim for exemplary damages, since a criminal penalty may be attached. State ex rel. Larson v. District Court (1967), 149 Mont. 131, 423 P.2d 598.

A violation by an insurer of § 33-18-102, MCA, constitutes a misdemeanor as defined in § 33-1-104, MCA, as follows:

> Each violation of any provision of this code, except 33-30-1012, with respect to which violation a greater penalty is not provided by other applicable laws of this state shall, in addition to any administrative penalty otherwise applicable thereto upon conviction in a court of a competent jurisdiction of this state be punishable by a fine of not less than $50 or more than $1,000 or by imprisonment in the county jail for not less than 30 days or more than 90 days or by both such fine and imprisonment. (Emphasis added.)

The California Supreme Court without referring to whether a criminal penalty attached as our insurance cases do in Montana, determined that a single deceptive act or practice was sufficient to give rise to a cause of action in Royal Globe Insurance Company v. Superior Court, Etc. (Cal. 1979), 592 P.2d 329, 336:

> It seems clear to us that this issue is not independent of the matters we have discussed above. If, as we conclude, the act affords a private party, including a third party claimant, a right to sue an insurer for violating subdivision (h), it is inconceivable that the Legislature intended that such a litigant would be required to show that the insurer committed the acts prohibited by that provision "with such frequency as to indicate a general business practice." There would be no rational reason why an insured or a third party claimant injured by an insurer's unfair conduct, knowingly performed, should be required to demonstrate that the insurer had frequently been guilty of the same type of misconduct involving other victims in the past.. . ."

Under § 33-18-201, MCA, it is an unfair claims settlement practice to refuse to pay claims without conducting a reasonable investigation based upon all available information; to fail to acknowledge and act reasonably and promptly on communications with respect to claims arising out of insurance policies; and to neglect to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim in which liability has become

reasonably clear. For each of these unfair practices, an issue of fact exists in this case under the complaint brought by Fode. Farmers Insurance Exchange is prohibited under § 33-18-102 from engaging in a single one of any of those practices defined in the subsequent section. Therefore, without having to prove a general business practice, Fode has at least a statutory right, and probably a common law right to pursue Farmers Insurance Group without first establishing by another suit in another action against another party that liability is reasonably clear. The majority errs when it remands the case for further proceedings to allege and prove a general practice of unfair claims settlement practices.

Under the facts alleged by Fode, Farmers Insurance Exchange is forcing Fode to sue the insured and to establish liability before it will negotiate his claim. It is this very kind of action that brought about the adoption by the legislature of § 25-10-303, MCA, as we said above. We should acknowledge that Fode's complaint is sufficient now, and remand to determine the necessary issues of fact in one action.

John C. Sheehy
Justice

Mr. Justice William E. Hunt, Sr., concurs in the above dissent:

William E. Hunt
Justice

- 18 -