MR. JUSTICE SHEEHY,
dissenting:
I dissent from the majority opinion although I agree that the summary judgment entered by the District Court must be vacated.
For the purposes of this dissent, the term “third party claimant” means a person whose property has been damaged or who has received personal injuries caused by an insured driver. In this case the third party claimant is Fode. The term “insured” refers to David Michael Fiedler, the driver of the other automobile in this case. The term “insurer” refers to Farmers Insurance Exchange, which issued a policy of liability insurance to David Michael Fiedler.
At 5:00 p.m. on the afternoon of December 1, 1984, Fode was operating his vehicle in the center lane of the three lanes provided for southbound traffic on Main Street in the Billings Heights. He was driving at approximately 25 miles per hour, about IV2 car lengths behind a pickup truck operated by Fiedler. The roadway was icy, with a light cover of snow and it was just beginning to get dark. As the vehicles approached an intersection, a vehicle from the northbound lane of traffic attempted to make a left turn across the lane of traffic occupied by Fiedler, who was followed by Fode. The left turning vehicle lost control, missed the turn and stopped at the right hand curb in Fiedler’s direction of travel. Fiedler swung out to the left to avoid the left turning vehicle and Fode followed suit. Fiedler, however, attempted to return to the right hand lane, lost control, skidded into the center dividing strip of Main Street, spun again and crossed to the right hand side of Main Street, where he struck the curb and the telephone pole. In that position, Fode’s vehicle struck the Fiedler vehicle.
On December 7, 1984, Fode called Hoglum, the adjuster for Farmers Insurance Group, the insurer in this case. Hoglum informed Fode by telephone that the position of Farmers Insurance Group was that it was in no way liable to Fode for the damages to his automobile (he does not seek personal injury damages) and that he should see his lawyer. Fode’s testimony is that he was always willing *289 to negotiate away from 100% of his claim but that the insurer denied his claim in its entirety.
Fode sued the insurer claiming a breach of duty under common law on the part of the insurer to negotiate with him. The District Court did not look to whether issues of material fact existed but dismissed his claim on summary judgment, stating:
“The plaintiffs claim in this case is premised on an alleged breach of duty arising under the common law. Because the court finds that no such duty exists, there is no need to determine whether issues of material fact exist as to an alleged breach of duty. Accordingly the scope of the court’s inquiry is confined to determining whether defendant Farmers Insurance Exchange is entitled to summary judgment as a matter of law.”
The primary issue for us on this appeal, therefore, is whether there is a common law right of action for failure to negotiate against the insurer in this case. If such an action does exist, then certainly material issues of fact exist as to whether FIG should have negotiated with Fode prior to his commencing suit.
The majority gives no consideration to this issue raised by Fode, but looks instead to a statutory duty imposed upon insurers under Section 33-18-201, MCA. In so doing, the majority moves with too much speed and too little thought given to a substantive issue of law raised by Fode, whether there exists a common law duty upon an insurer to negotiate with a third-party claimant.
In at least two Workers’ Compensation cases, this Court has recognized a common law obligation of insurers to refrain from intentional torts and unfair practices in settlement and negotiation of claims. In Hayes v. Aetna Fire Underwriters (1980), 187 Mont. 148, 609 P.2d 257, we approved an action against an insurer for alleged intentional torts of fraud, conversion and intentional infliction of emotional distress, inspite of the exclusivity clause of the Workers’ Compensation Act. Section 39-71-411, MCA. In Vigue v. Evans Products Company (1980), 187 Mont. 1, 608 P.2d 488, we again permitted a common law action against the Workers’ Compensation carrier for fraud, conversion, economic duress and bad faith.
In Lipinski v. The Title Insurance Company (1982), 202 Mont. 1, 655 P.2d 970, we held expressly that insurance companies have a duty to act in good faith with their insureds and that this duty exists independently of the insurance contract and independent of statute. 202 Mont. at 15, 655 P.2d at 977. In Lipinski, we held that a *290 title insurer breached the implied duty of good faith in failing to defend the insured’s title when it was attacked.
In Weber v. Blue Cross of Montana (1982), 196 Mont. 454, 643 P.2d 198, Justice Weber stated:
“[a] cause of action may sound in tort although it arises out of a breach of contract, if a defaulting party, by breaching the contract, also breaches a duty which he owed to the other party independently of the contract.”
196 Mont. at 463, 643 P.2d at 203.
Is there a basis now to find a duty on the part of the insurer to negotiate with Fode regarding his property damage independent of contract? Certainly. The duty arises out of the adoption in Montana of the mandatory insurance law. Section 61-6-301, MCA.
Before the adoption of the mandatory liability insurance law, a motorist whose vehicle was damaged by the driver of another insured vehicle, if the insurer was unwilling to negotiate with the third party claimant, had to sue the insured driver personally in order to establish liability and his right to the insurance proceeds from the insurer. It was unfortunately the case that many insurers, in order to force settlements or to avoid paying at all, refused to negotiate with third parties unless suit was brought by the third party for property damages. It was this unfair practice which led the legislature to the adoption of Section 25-10-303, MCA, referred to in the majority opinion, which provides that if a plaintiff secures a judgment equal to or greater than the amount of property damages claimed by him, he is entitled to reasonable attorney fees.
Moreover, because the presence of insurance was a matter of grace on the part of the insured this Court and others were careful not to allow a third party plaintiff to name the insurance company as a defendant because of the possibility that the trier of fact might be prejudiced if the fact of insurance were known.
Before mandatory liability insurance, whether the owner and operator of a motor vehicle carried liability insurance was a matter of his business acumen, and the insurance policy was issued to the insured for the purpose of protecting his liability. After mandatory liability insurance, however, the party sought to be protected by law is not the insured, but the injured claimant. Mandatory liability insurance laws are passed by legislatures to protect the general traveling public by requiring all drivers to carry liability insurance.
Before mandatory liability insurance, it was assumed that jurors or other triers of fact should not know of the presence of insurance and *291 therefore the insurance company should not be mentioned in any proceedings relating to the liability action. Now, however, every jury or trier of fact must know that insurance is indeed involved because of the mandatory law. Formerly, some motorists carried liability insurance out of a sense of public duty. Now, all must carry liability insurance because of public policy.
Thus, it was stated in Ferguson v. Employers Mutual Casualty Company (1970), 254 S.C. 235, 174 S.E.2d 768, 771:
“The primary purpose of compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by the negligence of financially irresponsible motorists. Its purpose is not like that of ordinary liability insurance to save harmless the tortfeasor himself. The injured person’s rights against the insurer are not derived through the insured as in the case of voluntary insurance. They are statutory and become absolute on the occurrence of an injury covered by the policy.”
We have upheld the constitutionality of the compulsory automobile liability insurance statutes. State of Montana v. Turk (1982), 197 Mont. 311, 643 P.2d 224.
Once we understand the true focus of the mandatory liability insurance law we can look with a different light at Section 28-1-203, MCA, which provides:
“Enforcement of obligations arising by operation of law. An obligation arising from operation of law may be enforced by civil action or proceeding or in the manner provided by law.”
Under Section 28-1-203, MCA, a person entitled to enforce an obligation has two remedies, (1) a civil action or (2) a proceeding authorized by law. The majority in this case has confined Fode to the “manner provided by law,” in Section 33-18-201, MCA, without, explaining why he is not also entitled to a civil action.
A second reason for my dissent is the unnumbered rule of civil procedure promulgated by the majority which halts proceedings against an insurer in a bad faith case and suspends discovery. That the unnumbered rule is ill-advised may be shown in that it springs from no issue raised by the parties in this case, it is unbriefed and unargued, and comes like a bolt from the blue to an unsuspecting, unprepared bar. The unnumbered rule conflicts with statutes and with certain numbered Rules of Civil Procedure.
The first conflict with a statute is the adoption of the rule itself. Section 3-2-702, MCA, requires that before any rules of procedure are adopted by us they should first be considered and prepared by *292 an advisory commission. Here the advisory commission is by-passed. The precipitous action of the majority is justified by their statement that “experience in the field teaches us that a change in procedure is necessary.” The statement is unsubstantiated by reference to cases in our files or by citation to studies done elsewhere.
The unnumbered rule of the majority conflicts with the remedy adopted by the legislature in 1985 following Klaudt v. Flink, supra. Section 33-18-241, MCA, provides:
The trial of a claim or action against an insurer for lack of good faith in its handling or settlement of an insurance claim may not be consolidated with a trial of the underlying claim if:
“(1) the lack of good faith claim is against a party different for the party against whom the underlying claim is made; and
“(2) the parties have not stipulated to consolidation of the trial of the lack of good faith and the underlying claim.” (Emphasis added.)
Thus a remedy for Klaudt, supra, has already been provided by the legislature. Under Section 32-18-241, MCA, where a third party claim against an insured is combined with a third party claim against the insured’s carrier the trials of the two causes must be separated. The legislature made no such provision where an insured sues his own carrier both for bad faith and for the underlying obligation. But, under the rule adopted by the majority now, an insured may not proceed in the same suit against his own carrier to discovery and other proceedings until the liability portion is first determined. Thus does the majority force the insured into two trials. Under the rule adopted by the majority, the earlier cases we have decided in favor of insureds in bad faith cases, Lipinski, supra; Weber, supra, and First Security Bank v. Goddard (1979), 181 Mont. 407, 593 P.2d 1040; and others would have required two trials rather than the one trial, the decision of which came to us on appeal. It is on that basis that the unnumbered rule adopted by the majority is ill-considered and ill-advised.
The unnumbered rule conflicts with Rule 23(d), M.R.Civ.P. which gives to the District Court the power to make appropriate orders respecting the course of proceedings in cases before it; with Rule 18(a), M.R.Civ.P., which permits a party to join as many legal or equitable claims or both as he has against an opposing party; and it raises havoc with Rules 26 to 38, M.R.Civ.P., which relate to discovery.
The unnumbered rule will not wreck the tort system, of course, because the tort system is broader by far than cases against insurers. *293 It will however, substantially increase the costs to litigants of litigation against insurers for breach of the implied covenant of good faith and fair dealing.
A third reason for my dissent is the implication in the majority opinion that a bad faith case against an insurer requires proof of a general business practice of unfair claims settlement or deceptive acts.
The holding of the federal district court in Marzolf v. Hoover (D. Mont. 1984), 596 F. Supp. 596, was incorrect when it stated that “the only duty running from an insurer to a third party claimant is that imposed upon the insurer by Section 33-18-201, MCA (1979).” The federal district court ignored, as does the majority in this case, the provisions of Section 33-18-102, MCA, which establishes the duty upon insurers not to engage in even a single unfair or deceptive act or practice. That statute provides:
“No person shall engage in this state in any trade practice which is defined in this chapter as or determined pursuant to this chapter to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.” (Emphasis added.)
That statute, by its terms, is limited to a single act or practice.
Section 33-18-102, MCA, is prohibitory in nature, and was enacted for the protection of the public. It has been the law of this State at least since 1912 that where a statute “makes a requirement, or prohibits a thing, for the benefit of a person or class of persons, one injured by reason of a violation of it is entitled to maintain an action against him by whose disobedience he has suffered an injury.” Melville v. Butte-Balaklava Copper Co. (1913), 47 Mont. 1, 130 P. 441.
It is plain as day that a single breach of the statute constituting an unfair or deceptive act or practice by an insurer, toward an insured or a third party claimant, which causes injury, gives rise to an action against the insurer; and further, if the breach is oppressive, malicious or fraudulent, it will also give rise to a claim for exemplary damages, since a criminal penalty may be attached. State ex rel. Larson v. District Court (1967), 149 Mont. 131, 423 P.2d 598.
A violation by an insurer of Section 33-18-102, MCA, constitutes a misdemeanor as defined in Section 33-1-104, MCA, as follows:
“Each violation of any provision of this code, except 33-30-1012, with respect to which violation a greater penalty is not provided by other applicable laws of this state shall, in addition to any administrative penalty otherwise applicable thereto upon conviction in a court of a competent jurisdiction of this state be punishable by a *294 fine of not less than $50 or more than $1,000 or by imprisonment in the county jail for not less than 30 days or more than 90 days or by both such fine and imprisonment.” (Emphasis added.)
The California Supreme Court without referring to whether a criminal penalty attached as our insurance cases do in Montana, determined that a single deceptive act or practice was sufficient to give rise to a cause of action in Royal Globe Insurance Company v. Superior Court, Etc. (1979), 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329, 336:
“It seems clear to us that this issue is not independent of the matters we have discussed above. If, as we conclude, the act affords a private party, including a third party claimant, a right to sue an insurer for violating subdivision (h), it is inconceivable that the Legislature intended that such a litigant would be required to show that the insurer committed the acts prohibited by that provision ‘with such frequency as to indicate a general business practice.’ There would be no rational reason why an insured or a third party claimant injured by an insurer’s unfair conduct, knowingly performed, should be required to demonstrate that the insurer had frequently been guilty of the same type of misconduct involving other victims in the past . . . .”
Under Section 33-18-201, MCA, it is an unfair claims settlement practice to refuse to pay claims without conducting a reasonable investigation based upon all available information; to fail to acknowledge and act reasonably and promptly on communications with respect to claims arising out of insurance policies; and to neglect to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim in which liability has become reasonably clear. For each of these unfair practices, an issue of fact exists in this case under the complaint brought by Fode. Farmers Insurance Exchange is prohibited under Section 33-18-102 from engaging in a single one of any of those practices defined in the subsequent section. Therefore, without having to prove a general business practice, Fode has at least a statutory right, and probably a common law right to pursue Farmers Insurance Group without first establishing by another suit in another action against another party that liability is reasonably clear. The majority errs when it remands the case for further proceedings to allege and prove a general practice of unfair claims settlement practices.
Under the facts alleged by Fode, Farmers Insurance Exchange is forcing Fode to sue the insured and to establish liability before it *295 will negotiate his claim. It is this very kind of action that brought about the adoption by the legislature of Section 25-10-303, MCA, as we said above. We should acknowledge that Fode’s complaint is sufficient now, and remand to determine the necessary issues of fact in one action.
MR. JUSTICE HUNT concurs in the above dissent.