## Central West Casualty Co. v. Stewart.

(Decided March 14, 1933.)

138

STROTHER HYNES for appellant.
WILSON & ROBINSON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

R. E. Culbertson leased from J. Boyd Stewart a dwelling house in Ashland for a period of one year at a monthly rental of $50, and agreed to give him a surety bond for the proper care of the property and payment of the rent. At that time Culbertson was the agent of the Central West Casualty Company, acting under a duly recorded power of attorney authorizing him to execute on behalf of the company as surety "any bond, undertaking or contract of suretyship, not to exceed the sum of Fifty Thousand Dollars ($50,000.00)." On June 1, 1929, and while the power of attorney was in full force and effect, Culbertson, as principal, and the Central West Casualty Company, as surety, by and through Culbertson, as attorney in fact, executed and delivered to Stewart a bond for $600, conditioned that Culbertson would pay the rent. Culbertson failed to pay the rent, and, when he vacated the premises, he was indebted to Stewart in the sum of $400.

Relying on the foregoing facts, Stewart brought this action against Culbertson and the casualty company to recover on the bond. Its demurrer to the petition having been overruled, the casualty company filed a separate answer pleading, in substance, that Culbertson at the time of the execution of the bond had no actual authority from the company to sign its name as surety on any undertaking in which any private interest of Culbertson might be involved; that Culbertson well knew this fact, and did not report the execution of the bond to the casualty company in the usual course of business, or at all, and that no premium therefor was ever paid; that the company did not know of the undertaking until demand for payment was first made, and it then notified Stewart that Culbertson had acted without authority, and it did not consider itself liable by reason of the execution of the bond. Stewart's

demurrer to the answer having been sustained, and. the company having declined to plead further, judgment was rendered in favor of Stewart for $400, with interest and costs. The company has prayed an appeal.

The ground on which the contract is assailed is that it is contrary to public policy. In a general way the public policy of a state is its attitude toward certain acts, transactions, and practices, as declared in its. Constitution and statutes, and in its common law found in the opinions of its court of last resort. If the Constitution or statutes speak upon the subject, the policy of the state is necessarily fixed to that extent. Whatever they authorize or approve is sanctioned by public, policy, and whatever they prohibit is against public, policy. Gathright v. Byllesby & Co., 154 Ky. 106, 157 S. W. 45. However, there are innumerable subjects not specifically treated in either the Constitution or statutes, and as to these the public policy of the state is declared by the court of last resort. In a more narrow sense public policy is usually understood to be the principles under which freedom of contract and private dealing are restricted by law for the good of the community. Ballard County Bank's Assignee v. U. S. Fidelity & Guaranty Co., 150 Ky. 236, 150 S. W. 1, Ann. Cas. 1914C, 1208. Thus certain classes of contracts, though not prohibited by the Constitution or statutes, are held by the courts to be against public. policy on the ground that they promote unfairness and injustice, and are therefore mischievous in their tendency, and detrimental to the public good. Pursuant to this principle it may be laid down as a general rule that, in the absence of express authority or subsequent ratification with full knowledge of the facts. an agent cannot act for his principle in any matter in. which the private interests of such agent are involved.. The reason for this rule is that the agent owes his principal the utmost good faith, and on account of the weakness of human nature cannot be expected to be faithful to his principal when impelled by selfishness to look out for himself. Following this rule we held in Bank of Louisville v. Gray, 84 Ky. 565, 2 S. W. 168, 8 Ky. Law Rep. 664, that a sale by an agent to himself of the property was void at the option of the principal, and that one who purchases from the agent with notice of the facts holds as trustee for the principal. In Johns. v. Parsons, 185 Ky. 513, 215 S. W. 194, we approved of

the rule announced in 21 R. C. L. p. 910, that every agency is subject to the legal limitation that it cannot be used for the benefit of the agent himself, or of any person other than the principal, in the absence of an agreement that it may be so used, and, as this is a matter of law, and not of fact, all persons must take notice of it. In Johnson v. Mitchell, 192 Ky. 444, 233 S. W. 884, we held that an agent employed to sell property could not become the purchaser thereof without fully and completely acquainting his principal with all the facts. In the more recent case of Weatherholt v. National Liberty Insurance Co., 204 Ky. 824, 265 S. W. 311, we held that public policy forbids one to enter into a contract with himself as agent for another without the acquiescence or ratification of the principal, and that an insurance policy written by the agent on his own property could not be enforced. A case more nearly in point is Salene v. Queen City Fire Ins. Co., 59 Or. 297, 116 P. 1114, 35 L. R. A. (N. S.) 438, Ann. Cas. 1916D, 1276. There a fire insurance agent had a general authority from his company to write and issue fire insurance policies. There was no express restriction on issuing a policy against his own house. He mortgaged one of his houses to plaintiff for a loan to him personally, and issued on behalf of his company a fire policy with loss clause payable to plaintiff. He reported the transaction to the company and remitted the customary premium. Before the company could repudiate the act of the agent, the fire occurred. In denying a recovery on the policy, the court pointed out that plaintiff knew that the agent was providing a security for the possible payment of his debt out of the funds of the company, and therefore dealt with him at her peril, and that, before she could recover, it was necessary for her to bring home to the company knowledge of the whole transaction before any liability arose on the policy, and to further show that the company with such knowledge approved or ratified the transaction.

Here Stewart accepted the bond knowing that it was executed by Culbertson as principal, and on behalf of the casualty company as surety, for the purpose of securing the rent, which Culbertson agreed to pay. Authority to execute "any bond or undertaking" was not sufficiently broad or specific to bind the company on Culbertson's own debt. The facts pleaded in

the answer negative the theory of knowledge, ac-- quiescence, or ratification. As Stewart accepted the bond knowing that the interest of Culbertson and those of the casualty company were necessarily antagonistic,. he was charged with notice of Culbertson's want of authority to bind his principal by his acts. 21 R. C. L. p. 910; Langlois v. Gragnon, 123 La. 453, 49 So. 18, 22 L. R. A. (N. S.) 414. While the result is a harsh one, a contrary holding is not possible in view of the settled law of this state that such a contract is against public policy. It follows that the demurrer to the answer should have been overruled.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.