PROGRESSIVE NORTHERN
INSURANCE CO.,
Appellant,

v.

Melissa CORDER and Roy Stinnett,
Jr., Appellees.

No. 98–SC–0392–CL.

Supreme Court of Kentucky.

April 20, 2000.

Donald L. Miller, II, Stockard R. Hickey, III, John F. Carroll, Brown, Todd & Heyburn, PLLC, Louisville, for appellant.

James D. Ishmael, Jr., Fowler, Measle & Bell, LLP, Lexington, for appellee, Melissa Corder.

James A. Shuffett, Kara K. Clements, Lexington, for appellee, Roy Stinnett, Jr.

LAMBERT, Chief Justice.

Pursuant to CR 76.37(1), this Court granted the certification request of the United States Court of Appeals for the Sixth Circuit to answer the following questions of Kentucky law:

(1) When an insurance policy is allegedly procured by omissions or misrepresentations by the insured, is the insurer able to rescind coverage to avoid liability to innocent injured third-parties?

and

(2) If the insurer is prohibited from rescinding coverage, does the Kentucky Motor Vehicle Reparations Act ("MVRA"), KRS 304.39–101, *et seq.*, govern the amount the insurer is responsible for when an innocent third party is injured?

To resolve these issues of first impression, we must consider the right of an insurer to be protected from misrepresentation committed by its insured and this Commonwealth's public policy favoring compensation for persons injured in motor vehicle accidents.

This case arose as the consequence of a motorcycle accident involving a vehicle owned and insured by Roy Stinnett, Jr., and driven by his then 20–year–old son, Jason Stinnett. In July 1995, Roy Stinnett applied for and was issued motorcycle insurance with Progressive Northern Insurance Company. The insurance application listed Roy Stinnett as the only operator of the motorcycle. The policy became effective on July 20, 1995 and contained liability limits of $250,000 per person and $500,000 per accident. On October 19, 1995, Jason Stinnett was operating the motorcycle and Melissa Corder was riding as a passenger. Both were injured in a single vehicle accident. All premium payments were current at the time of the accident.

On March 19, 1996, Corder, the injured passenger filed suit in Fayette Circuit Court against both Roy and Jason Stinnett. Corder also sued her father's insurer, State Farm Mutual Automobile Insurance Company, claiming benefits under the uninsured and underinsured motorist provisions of its policy.

On April 8, 1996, Progressive filed a declaratory judgment action in the United States District for the Eastern District of Kentucky, seeking a declaration that Roy Stinnett's motorcycle insurance policy "is rescinded and null and void *ab initio* " on grounds that the insured had made material misrepresentations in his application, i.e., listing himself as the only operator of the motorcycle. Relying on *National Ins. Ass'n v. Peach,* Ky.App., 926 S.W.2d 859 (1996), which held that an insurer was precluded from rescinding an insurance contract as to persons who were not parties to the misrepresentation, the court entered summary judgment against Progressive. Progressive appealed to the United States Court of Appeals for the Sixth Circuit, which requested certification of the aforementioned questions of law.

Progressive now contends that the insurance policy was fraudulently procured not for the insured, Roy Stinnett, but for his son, Jason. Progressive points out that Jason was the only licensed motorcycle operator in the Stinnett family and that he was the primary operator of the motorcycle. Further, had it known that Jason would be the primary operator of the mo-

torcycle, the premium for the policy would have been $3,588.40 rather than the $646.00 paid by the insured. Progressive alleges that this price differential was known to the insured and was the reason he misrepresented on his application that he would be the sole operator of the motorcycle.

Progressive seeks to have the insurance contract rescinded. A recission avoids the contract ab initio whereas a cancellation merely terminates the policy as of the time when the cancellation becomes effective. In other words, cancellation of a policy operates prospectively, while recission, in effect, operates retroactively to the very time that the policy came into existence.

L. Russ and T. Segalla, *Couch on Insurance* § 30:3 (3d Ed. Clark, Boardman, Callaghan 1996). In support of its claim, Progressive argues that recission of the insurance contract is allowed by KRS 304.14–110, which provides in relevant part:

All statements and descriptions in any application for an insurance policy or annuity contract, by or on behalf of the insured or annuitant, shall be deemed to be representations and not warranties.

Misrepresentations, omissions, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(1) Fraudulent; or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued the contract in as large and amount, or would not have provided coverage with respect to the hazard resulting from the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

KRS 304.14–110 reflects a public policy requiring "those who apply for insurance [to] be honest and forthright in their representations." *State Farm Mut. Auto Ins. Co. v. Crouch,* Ky.App., 706 S.W.2d 203, 207 (1986).

There is merit to the argument that KRS 304.14–110 allows recission when applied to an injured insured. *See Crouch,* 706 S.W.2d 203 (holding that an insurer could rescind an insurance policy when the claimant was the injured insured who had engaged in material misrepresentations). On the other hand, the application of KRS 304.14–110 to defeat recovery to an innocent, injured third party would undermine the public policy of compulsory liability insurance in this Commonwealth. As noted in *Peach,* a major objective of the MVRA is "to insure continuous liability coverage in order to protect the victims of motor vehicle accidents and to insure that one who suffers a loss as the result of an automobile accident would have a source and a means or recovery." 926 S.W.2d at 861 (*citing Crenshaw v. Weinberg,* Ky., 805 S.W.2d 129 (1991)). Furthermore, the MVRA is remedial legislation that should be construed to accomplish these objectives. *Beacon Ins. Co. of America v. State Farm Mut. Ins. Co.,* Ky., 795 S.W.2d 62 (1990).

This Commonwealth's commitment to ensuring recovery for injuries sustained in motor vehicle accidents is clearly expressed in the provisions of the MVRA. KRS 304.39–080(5) requires every owner of a motor vehicle registered or operated in Kentucky to provide continuously an insurance contract or other security for payment for basic reparations benefits and tort liabilities arising from the use of the vehicle. KRS 304.39–085 requires every insurance company to report all insured persons whose policies have been terminated by the Department of Vehicle Regulation. KRS 304.39–090 prohibits a motor vehicle owner who ceases to maintain security from operating or permitting the vehicle to be operated in Kentucky.

■ Recission of an insurance contract after an accident would strike at the heart of compulsory liability insurance and would operate as the functional equivalent of a contractual exclusion from minimum liability coverage. Such an exclusion was held to be improper in *Bishop v. Allstate*, Ky., 623 S.W.2d 865, 866 (1981), because it contravened the purpose of compulsory automobile insurance, which is "to assure that a driver be insured to a minimum level." The result urged by Progressive would likewise defeat minimum coverage, with the consequence that an innocent, injured third party would bear the burden of intentional misrepresentations by the insured. It would shift the loss to one who was entitled to rely on obedience to the law and one who was without any means of determining whether a policy had been fraudulently procured. As between the injured third party and the insurer, the latter is in the far superior position to protect itself. The insurer may accept or reject policy applicants and it possesses the skill and wherewithal to make sound underwriting decisions.[1] Therefore, Progressive may not rescind the contract to avoid liability to Corder. This result has been reached across the country in other jurisdictions with compulsory insurance statutes. *See Peach*, 926 S.W.2d at 861 (providing a list of these jurisdictions).

■ Although Corder must be allowed to recover damages under the Stinnett policy, she may recover only up to the minimum amount of liability coverage required by the MVRA. The MVRA is a self-contained Act, and its provisions must be read consistently. Thus, since the public policy behind the Act governs the availability of recovery, it also must govern the amount recoverable. KRS 304.39-110 sets forth the minimum sums. The public policy expressed in the Act is that every victim of a motor vehicle accident will be able to recover the statutory minimum sum towards satisfaction of any judgment obtained. No public policy would be advanced by enforcing contractual terms that exceed the required coverage. In so holding, the competing interests of the insurance company and the public policy of this Commonwealth are equitably balanced.

■ In summary, where loss must be borne by an innocent third party or by an insurance company which has written a policy pursuant to a compulsory insurance statute and accepted a premium therefor, it should be the insurance company that bears the loss up to the minimum statutory limits. Whether a particular injured third party has or has not a policy of uninsured motorist or underinsured motorist coverage is inconsequential. Our concern here is with the relationship between the injured third party, the negligent defendant, and the insurance company which provides indemnity for the claim.

■ Our decision here does not leave Progressive without a remedy. If Progressive's insured, Roy Stinnett, Jr., fraudulently induced the company to issue the policy, Progressive could assert a claim for fraud against him for any damages suffered as a result of alleged fraud in the procurement of the policy.[2] If Progressive's allegations of fraud are true, Roy Stinnett should be ultimately responsible

---

1. Parenthetically, we observe that Progressive issued a motorcycle liability insurance policy to one who did not possess a motorcycle operator's license.

2. *New York Life Ins. Co. v. Hord*, Ky., 77 S.W. 380 (1903) (Court held that an action based on fraud in the procurement of a life insurance policy could not be maintained if benefits were paid with knowledge of the fraud, implying that such an action could otherwise be maintained.); *Agricultural Ins. Co. v. Supe-*rior Court, 70 Cal.App.4th 385, 82 Cal.Rptr.2d 594, 596 ("an insured—no different than everyone else—has a duty not to defraud. Firstly, an insured must not defraud in the procurement of the policy."); *Moss v. Mt. Morris Mut. Ins. Co.*, 582 N.W.2d 503, 506 ("Mt. Morris acknowledges that an insurer may claim subrogation against its own insured only in cases of fraud, in order to place the responsibility for damages upon the one who caused the loss").

for Corder's damages, but Progressive, not Corder, should be the one to look to him.

The law of Kentucky is hereby certified to the United States Court of Appeals for the Sixth Circuit.

GRAVES, KELLER, STUMBO, and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion in which JOHNSTONE, J., joins.

COOPER, Justice, dissenting.

Once again, the majority of this Court doffs its judicial robes and presumptuously assumes the mantle of the General Assembly. Today, we *reenact* by judicial fiat a statute which the legislature has chosen to *repeal.* Because I continue to regard the General Assembly as a co-equal branch of government, Ky. Const. §§ 27, 28, 29, *D & W Auto Supply v. Dep't of Revenue,* Ky., 602 S.W.2d 420, 423 (1980), vested with the power to establish public policy in this Commonwealth, *Commonwealth ex rel. Cowan v. Wilkinson,* Ky., 828 S.W.2d 610, 614 (1992), *Kentucky State Fair Board v. Fowler,* 310 Ky. 607, 221 S.W.2d 435, 439 (1949), I necessarily dissent from this latest judicial usurpation of legislative prerogative.

\* \* \*

On July 20, 1995, Progressive Northern Insurance Company issued a motorcycle insurance policy to Roy Stinnett, Jr., providing liability insurance coverage of $250,000.00 per person and $500,000.00 per accident. The premium charged for this policy was $646.00. The covered vehicle was a 1995 Kawasaki Ninja motorcycle registered in Stinnett's name. Stinnett had stated in his application for insurance that he would be the sole operator of the Ninja and the policy listed him as its only operator. However, there is overwhelming evidence that Stinnett procured the policy not to provide coverage for himself, but to provide coverage for his twenty-year-old son, Jason Stinnett. Roy Stinnett, Jr., did not even possess a motorcycle operator's license. Jason was the only licensed motorcycle operator in the household and was the primary operator of the Ninja. If Progressive had known that twenty-year-old Jason was to be the primary operator of the motorcycle instead of his forty-five-year-old father, the premium for the policy would not have been $646.00, but $3,588.40. There is substantial evidence that this price differential was known to Roy Stinnett, Jr., and was the reason why he misrepresented on his application that he would be the vehicle's sole operator. Three months later, Jason demonstrated why there is such a price differential in insurance premiums for a twenty-year-old motorcyclist as opposed to a forty-five-year-old motorcyclist.

While operating the Ninja on October 19, 1995, Jason Stinnett was involved in a single vehicle accident in which both he and a passenger, Melissa Corder, were injured. Corder applied for no-fault benefits under the basic reparation benefits (BRB) coverage of Progressive's policy. When that application was denied, Corder filed suit in the Fayette Circuit Court against both Jason Stinnett and Roy Stinnett, Jr. She also sued her own insurer, State Farm Mutual Automobile Insurance Company, claiming benefits under the uninsured motorist (UM) and underinsured motorist (UIM) provisions of its policy.

Progressive then filed a declaratory judgment action in the United States District Court for the Eastern District of Kentucky seeking a declaration that the motorcycle insurance policy which it had issued to Roy Stinnett "is rescinded and null and void *ab initio* " on grounds that the insured had made material misrepresentations in his application. [State Farm, whose UM and UIM (and, perhaps, BRB) coverages are affected by the outcome of this case, is not a party to the declaratory judgment action; thus, its interests are not represented before this Court.] The District Court entered summary judgment against Progressive, relying on the deci-

sion of the Court of Appeals of Kentucky in *National Ins. Ass'n v. Peach,* Ky.App., 926 S.W.2d 859 (1996). Progressive appealed to the United States Court of Appeals for the Sixth Circuit, which has certified to this Court the questions of law recited in the majority opinion.

The issues certified to this Court implicate two public policies embodied in the statutory law of this Commonwealth: (1) protection of insurance companies from insurance fraud, KRS 304.47–020(1), by permitting rescission of insurance policies procured by fraud or material misrepresentation, KRS 304.14–110; and (2) provision of a source of recovery for persons injured in motor vehicle accidents by requiring that every owner of a motor vehicle provide BRB coverage and minimum tort liability coverage for that vehicle. KRS 304.39–010(1); KRS 304.39–080(5); KRS 304.391 110(1)(a); KRS 304.99–060. Our Court of Appeals has previously addressed these potentially competing public policies in two different contexts. In *State Farm Mut. Auto. Ins. Co. v. Crouch,* Ky. App., 706 S.W.2d 203 (1986), rescission was allowed where the claimant was the policy's named insured, who had been a party to the perpetration of the fraud or misrepresentation. In *National Ins. Ass'n v. Peach, supra,* rescission was not allowed where the claimant was an innocent third party, who was injured as a result of the negligence of one who had been a party to the perpetration of the fraud or misrepresentation.

It should be noted at the outset that KRS 304.20–030 and KRS 304.20–040 have no application to this case. KRS 304.20–030 prohibits the retroactive annulment of a contract of liability insurance *by agreement* between the insurer and the insured. Here, the insured, Roy Stinnett, Jr., is actively participating in this litigation and vigorously opposing Progressive's claim of rescission. Progressive is not relying on any agreement with Stinnett, but on KRS 304.14–110. KRS 304.20–040 deals with the cancellation, nonrenewal, or termination of a policy of insurance. Progressive is claiming rescission, not cancellation. As the majority opinion correctly notes:

> A rescission avoids the contract ab initio whereas a cancellation merely terminates the policy as of the time when the cancellation becomes effective. In other words, cancellation of a policy operates prospectively, while rescission, in effect, operates retroactively to the very time that the policy came into existence....

L. Russ & T. Segalla, *Couch on Insurance* § 30:3 (3d ed. Clark Boardman Callaghan 1996).

KRS 304.14–110 provides:

> All statements and descriptions in any application for an insurance policy or annuity contract, by or on behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> (1) Fraudulent; or
>
> (2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise. This subsection shall not apply to applications taken for workers' compensation insurance coverage.

This statute was enacted by the 1970 General Assembly as part of the Kentucky Insurance Code.1970 Ky.Acts ch. 301. However, statutes with virtually identical language have been on the books of this

Commonwealth since 1874.[1] In *Germania Ins. Co. of New York v. Rudwig,* 80 Ky. (3 Rodm.) 223 (1882), our predecessor court held that the statute "was but declaratory of the law as it then existed in this state." *Id.* at 234. In other words, the legislature saw fit to codify the common law with respect to rescission of a policy of insurance, *i.e.,* rescission is permitted if the policy was procured by fraud or material misrepresentation. In doing so, the legislature elevated what had been a common law right to the status of public policy.

> If the Constitution or statutes speak upon a subject, the policy of the state is necessarily fixed to that extent. Whatever they authorize or approve is sanctioned by public policy and whatever they prohibit is against public policy.

*Central West Cas. Co. v. Stewart,* 248 Ky. 137, 58 S.W.2d 366 (1933); *see also Commonwealth ex rel. Cowan v. Wilkinson,* supra, at 614; *Fann v. McGuffey,* Ky., 534 S.W.2d 770, 779 (1975); *Owens v. Clemons,* Ky., 408 S.W.2d 642, 645 (1966); *Kentucky State Fair Board v. Fowler,* supra, 221 S.W.2d at 439. The rescission statute has consistently been applied to policies of automobile insurance. *Standard Accident Ins. Co. v. Starks,* 351 F.2d 895 (6th Cir. 1965); *Progressive Specialty Ins. Co. v. Rosing,* 891 F.Supp. 378 (W.D.Ky.1995); *State Farm Mut. Ins. Co. v. Martin,* Ky., 382 S.W.2d 83 (1964); *State Farm Mut. Ins. Co. v.. Crouch,* supra.

In *National Ins. Ass'n v. Peach,* supra, the Court of Appeals relied on a string cite to thirteen cases interpreting the laws of twelve jurisdictions[2] in support of its conclusion that our financial responsibility statutes, KRS 304.39–080(5) and KRS 304.39–110(1)(a), preclude rescission for fraud or misrepresentation with respect to damage or injury to an innocent third party. However, eight of the thirteen cited cases were from jurisdictions which do not have statutes codifying an insurer's right to rescind. *Ferrell v. Columbia Mut. Cas. Ins. Co.,* 306 Ark. 533, 816 S.W.2d 593 (1991); *Munroe v. Great American Ins. Co.,* 234 Conn. 182, 661 A.2d 581 (1995); *American Underwriters Group v. Williamson,* 496 N.E.2d 807 (Ind.Ct.App. 1986);[3] *Continental Western Ins. Co. v.. Clay,* 248 Kan. 889, 811 P.2d 1202 (1991); *Van Horn v. Atlantic Mut. Ins. Co.,* 334 Md. 669, 641 A.2d 195 (1994); *United Sec. Ins. Co. v. Commissioner of Ins.,* 133 Mich.App. 38, 348 N.W.2d 34 (1984); *Fisher v. New Jersey Auto. Full Ins. Underwriting Ass'n,* 224 N.J.Super. 552, 540 A.2d 1344 (App.Div.1988); *Erie Ins. Exch. v. Lake,* 543 Pa. 363, 671 A.2d 681 (1996). Each of those cases essentially held that the enactment of financial responsibility statutes mandating minimum liability insurance coverage had abrogated the *common law* right of an insurance company to rescind after the occurrence of damage or injury to an innocent third party. A ninth case, *Allstate Ins. Co. v. Sullam,* 76 Misc.2d 87, 349 N.Y.S.2d 550 (N.Y.Sup.Ct. 1973), was decided by a county court judge in New York, who, though in a jurisdiction with an apparent codification of the right to rescind, N.Y.Ins.Law § 3105(b) (McKinney 1985) (formerly N.Y.L.1939 ch. 33 § 58), purported only to be abrogating the common law of that state.

The three remaining jurisdictions relied on in *Peach,* Arizona, Georgia and North Carolina, have statutes codifying the insurer's right to rescind, Ariz.Rev.Stat.Ann. § 20–1109; Ga.Code Ann. § 33–24–7; N.C.Gen.Stat. § 58–3–10; however, two of

---

1. Gen.St. ch. 22 § 22 (Bullitt & Feland 1887), recompiled as Gen.St. § 639 (Barbour & Carroll 1894); recompiled in 1942 as KRS 296.160; repealed and replaced in 1950 with KRS 304.656, 1950 Ky.Acts ch. 21 §§ 1, 2; repealed and replaced in 1970 with KRS 304.14–110, 1970 Ky.Acts ch. 301, subtitle 99 § 3 and subtitle 14 § 11.

2. In the thirteenth case, *Ferguson v. Employers Mut. Cas. Co.,* 254 S.C. 235, 174 S.E.2d 768 (1970), the Supreme Court of South Carolina was interpreting North Carolina law.

3. This intermediate appellate court decision has since been overruled by the Supreme Court of Indiana. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664 (Ind.1997).

those jurisdictions, Arizona and North Carolina, also have so-called "frozen liability" statutes, which provide as follows:

> The liability of the insurance carrier with respect to the insurance required by this chapter becomes absolute when injury or damage covered by the motor vehicle liability policy occurs.

Ariz.Rev.Stat.Ann. § 28–4009(C)(5)(a); *see also* N.C.Gen.Stat. § 20–279.21(f)(1). The decisions in *Midland Risk Management Co. v. Watford,* 179 Ariz. 168, 876 P.2d 1203 (1994), *Odum v. Nationwide Mut. Ins. Co.,* 101 N.C.App. 627, 401 S.E.2d 87 (1991) and *Ferguson v. Employers Mut. Cas. Co., supra* note 2 (interpreting North Carolina law), were all premised upon the language of these statutes. Identical "frozen liability" statutes presently exist in twenty-eight states.[4] Without exception, the courts of those states which have considered the issue to date have held that a "frozen liability" statute precludes rescission to the extent of the minimum liability insurance limits required by the financial responsibility statutes. *Prudential v. Estate of Rojo–Pacheco,* 192 Ariz. 139, 962 P.2d 213 (1997); *Harris v. Prudential Prop. and Cas. Ins. Co.,* 632 A.2d 1380 (Del.1993); *Farmers Ins. Exch. v. Anderson,* 206 Mich.App. 214, 520 N.W.2d 686 (1994); *Odum v. Nationwide Mut. Ins. Co., supra; Dairyland Ins. Corp. v. Smith,* 646 P.2d 737 (Utah 1982).[5] Kentucky also once had a "frozen liability" statute compiled within our former financial responsibility law:

The liability of the insurance carrier with respect to the insurance required by KRS 187.290 to 187.620 shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy.

KRS 187.490(6)(a) (enacted 1946 Ky.Acts ch. 118 § 21). *That statute was repealed by the General Assembly in 1978.* 1978 Ky.Acts ch. 434 § 9. The majority of this Court now reenacts that statute by judicial fiat under the pretext that the General Assembly intended by the enactment of our present financial responsibility statutes, KRS 304.39–080(5) and KRS 304.39–110(1)(a), to repeal by implication the rescission statute, KRS 304.14–110, with respect to third-party claims arising out of motor vehicle accidents. However, that pretext is belied by the fact that our present financial responsibility statutes were enacted in 1974, 1974 Ky.Acts ch. 384 § 8, 1974 Ky.Acts ch. 385 § 11, thus could not have been intended to *create* "frozen liability" by implication, since "frozen liability" was then already embodied in KRS 187.490(6)(a), which was not repealed until 1978.

Georgia is the only state with a rescission statute, but without a "frozen liability" statute, which holds that the enactment of

---

4. Ala.Code § 32–7–22(f)(1); Alaska Stat. § 28.20.440(f)(1); Ariz.Rev.Stat.Ann. § 28–4009(C)(5)(a); Ark.Code Ann. § 27–19–713(f)(1); Colo.Rev.Stat.Ann. § 42–7–414(2)(a); Del.Code Ann. tit. 21 § 2902(f)(1); Haw.Rev.Stat. § 287–29(1); 625 Ill.Comp.Stat. 5/7–317(f)(1); Iowa Code Ann. § 321A.21(6)(a); La.Rev.Stat.Ann. § 32:900(F)(1); Mich.Comp.Laws Ann. § 257.520(f)(1); Mo.Ann.Stat. § 303.190(6)(1); Mont.Code Ann. § 61–6–103(6)(a); Neb.Rev.Stat. § 60–538(1); Nev.Rev.Stat.Ann. § 485.3091(5)(a); N.C.Gen. Stat. § 20–279.21(f)(1); N.D.Cent.Code § 39–16.1–11(6)(a); Ohio Rev.Code Ann.

§ 4509.53(A); Okla.Stat.Ann. tit. 47 § 7–324(f)(1); Or.Rev.Stat. § 742.456; R.I.Gen. Laws § 31–32–24(f)(1); S.C.Code Ann. § 56–9–20(5)(b)(1); S.D. Codified Laws § 32–35–74(1); Tenn.Code Ann. § 55–12–122(e)(1); Va.Code Ann. § 46.2–479(1); Wash.Rev.Code Ann. § 46 .29.490(6)(a); W.Va.Code § 17D–4–12(f)(1); Wyo.Stat.Ann. § 31–9–405(f)(1).

5. Utah subsequently repealed its "frozen liability" statute. Utah Code Ann. § 41–12–21(f)(1) (repealed 1985 Utah Laws ch. 242 § 58).

its financial responsibility act abrogated the statutory right of rescission with respect to a claim of damage or injury to an innocent third party. *Sentry Indem. Co. v. Sharif,* 248 Ga. 395, 282 S.E.2d 907 (1981). *Sharif* was the thirteenth and last case relied on in *Peach.* In *State Farm Mut. Auto. Ins. Co. v. Crouch, supra,* another panel of our Court of Appeals specifically declined to follow *Sharif,* because it did not "represent the mainstream of judicial authority in this area of the law." *Crouch, supra,* at 207. That observation was and remains clearly correct. Until today, no other jurisdiction with the same statutory scheme has arrived at the conclusion reached in *Sharif.* The courts of all of the other jurisdictions which have similar statutory schemes and which have addressed this issue have held that the enactment of financial responsibility laws did not impliedly repeal the statutory right of rescission even with respect to an intervening accident and injury to an innocent third party. *Barrera v. State Farm Mut. Auto. Ins. Co.,* 71 Cal.2d 659, 79 Cal.Rptr. 106, 456 P.2d 674 (1969); [6] *Government Employees Ins. Co. v. Decheona,* 610 So.2d 480 (Fla.Dist.Ct.App.1992); *Abrams v. General Ins. Co., Inc.,* 508 So.2d 436 (Fla. Dist.Ct.App.1987); *Odom v. Insurance Co. of Pennsylvania,* 455 S.W.2d 195 (Tex. 1970); *Felde v. Kohnke,* 50 Wis.2d 168, 184 N.W.2d 433 (1971). As noted *supra,* the case against implied repeal is even stronger in Kentucky, since our present financial responsibility statutes were enacted prior to the repeal of our former "frozen liability" statute.

In *Colonial Penn Ins. Co. v. Guzorek, supra* note 3, the Supreme Court of Indiana held that its financial responsibility act did not abrogate the *common law* right of rescission even after an accident and injury to an innocent third party. In doing so, the court pointed out that a financial responsibility act's requirement of minimum compensation protection for an accident victim can be satisfied by the injured party's acquisition of uninsured motorist (UM) coverage. Viewed in that context, the issue becomes whether the loss should be borne by the defrauded liability carrier, or whether it should be borne by the injured party's UM carrier, which has charged a premium for accepting the risk of a loss caused by an uninsured tortfeasor. *Guzorek,* 690 N.E.2d at 672.

In Kentucky, every motor vehicle liability insurance policy must include UM coverage in an amount equal to that required by KRS 304.39–110(1)(a), unless that coverage is rejected by the insured. KRS 304.20–020(1). Subsection (2) of KRS 304.20–020 defines an "uninsured motor vehicle" as including an otherwise insured vehicle with respect to which coverage has been denied by the insurer. Specific reference in the UM statute to KRS 304.39–110 indicates that the statutes are in pari materia and should be construed together so as to give effect to all of the provisions of each. *Pendennis Club, Inc. v. Alcoholic Beverage Control Bd.,* 287 Ky. 49, 151 S.W.2d 438 (1941). Obviously, the legislature contemplated that despite the requirements of KRS 304.39–080(5) and KRS 304.39–110(1)(a), and the criminal sanctions imposed by KRS 304.99–060, uninsured vehicles would continue to be operated on our highways; and that some such vehicles would be uninsured solely because the insurer had a valid basis for denying

---

**6.** In *Barrera,* the Supreme Court of California vacated an intermediate court decision in the same case, 68 Cal.Rptr. 285 (Cal.Ct.App. 1968), which had held that a cancellation statute similar to KRS 304.39–040 superseded its rescission statute. In doing so, however, the Supreme Court of California remanded the case to the trial court for a determination as to whether the insurer had complied with its duty to conduct a reasonable investigation into the insurability of its applicant. In Kentucky, an insurer is entitled to rely on the representations of its insured absent clear notice and full cognizance of the true facts. *State Auto. Mut. Ins. Co. v. Spray,* 547 F.2d 397 (7th Cir.1977) (surveying and interpreting Kentucky law); *Cookendorfer v. Pendleton County Farmers Fire Ins. Co.,* 287 Ky. 735, 155 S.W.2d 204, 206–07 (1941); *State Farm Mut. Auto. Ins. Co. v. Crouch, supra,* at 206.

coverage under its policy. One such basis is embodied in KRS 304.14–110, *i.e.*, that the policy was procured by fraud or material misrepresentation, an act for which criminal sanctions are also prescribed. KRS 304.47–020.

So why has the majority of this Court resorted to such an unsupportable pretext as "implied repeal," even in the face of the legislative history of our "frozen liability" statute, in order to shift liability for Corder's injuries from her own UM carrier to Stinnett's defrauded liability carrier? The answer is simple and readily apparent. The desired result in this case is to hold both insurers liable and thereby provide Corder with (at least) double recovery. If Progressive cannot rescind, Corder can recover under both Progressive's BRB and liability coverages, as well as State Farm's UIM coverage. But if Progressive can rescind, Corder can recover under State Farm's UM coverage, but not its UIM coverage, because recovery cannot be had against the UM and UIM coverages of the same policy. *Cf. Motorists Mut. Ins. Co. v. Glass,* Ky., 996 S.W.2d 437, 448–50 (1997); *Windham v. Cunningham,* Ky. App. 902 S.W.2d 838 (1995). *Ergo,* the desired result is that Progressive cannot rescind; and the only theory which could possibly support that result is "implied repeal." Thus, the majority opinion ignores our own legislative history, as well as applicable precedents from jurisdictions with identical legislative schemes, and sim-

ply makes a public policy decision that the interests of an injured plaintiff such as Corder are superior to those of a defrauded insurer such as Progressive. That, of course, directly contravenes the public policy decision made by the General Assembly when it enacted KRS 304.14–110, the recission statute, and repealed KRS 187.490(6), the "frozen liability" statute. As noted *supra* in this opinion, the prerogative to establish public policy in this instance rests solely with the General Assembly.

Finally, the majority opinion suggests in gratuitous dictum that Progressive may avail itself of the alternative remedy of pursuing an action for subrogation against Roy Stinnett, Jr., for any amounts it is required to pay to Corder. Perhaps; but none of the cases cited by the majority in support of that proposition so hold,[7] and no cases so holding are found. As the majority well knows, whether a subrogation right is significant or merely illusory depends upon the financial resources of the wrongdoer. *Cf. Nationwide Mut. Ins. Co. v. State Farm Auto. Ins. Co.,* Ky., 973 S.W.2d 56, 57–58 (1998); *Coots v. Allstate Ins. Co.,* Ky., 853 S.W.2d 895, 902 (1993). An injured person who files a direct action against a tortfeasor's liability insurance carrier[8] stands in the shoes of and has no greater rights than the insured, *Tharp v. Security Ins. Co. of New Haven, Conn.,* Ky., 405 S.W.2d 760 (1966), *Sun Indem. Co. v. Dulaney,* 264 Ky. 112, 89 S.W.2d 307

---

7. *New York Life Ins. Co. v. Hord,* Ky., 77 S.W. 380 (1903) is a "not to be published" opinion (see CR 76.28(4)(a)) which involved an insurer's attempt to recoup life insurance proceeds paid to the beneficiaries of a fraudulently obtained policy. That case held only that a demurrer to the complaint was properly sustained because the insurer had not specifically pled that it paid the proceeds without knowledge of the fraud. *Agricultural Ins. Co. v. Superior Court,* 70 Cal.App.4th 385, 82 Cal. Rptr.2d 594 (1999) held that an insurer under a business owner's policy had a cause of action against its insureds for expenses incurred in defending against a fraudulent claim asserted by the insureds for earthquake damage. *Moss v. Mt. Morris Mut. Ins. Co.,* 582 N.W.2d 503 (Wis.Ct.App.1998), another

unpublished opinion, held that an insurer under a homeowner's policy could not recover from its named insured payments which it made to an additional insured (mortgagee) for fire damage, because the jury had found that the named insured had not intentionally caused the fire.

8. Although Kentucky is not a "direct action" jurisdiction, *Cuppy v. General Accident Fire & Life Assurance Corp.,* Ky., 378 S.W.2d 629, 632 (1964), a direct action may, in fact, be brought against a liability insurer to enforce an unsatisfied judgment against the insured. *New York Indem. Co. v. Ewen,* 221 Ky. 114, 298 S.W. 182 (1927).

(1935); and any policy defense which would have been available against the insured is also available against the injured party. *Kentucky Farm Bureau Mut. Ins. Co. v. Miles,* Ky., 267 S.W.2d 928 (1954). It is no justification for a wrong decision to assert that an innocent party who is legally entitled to win can afford to lose because it might be able to recoup its losses by way of a collateral remedy. Why should Progressive be required to pursue a problematic subrogation claim when the law is clear that it has no liability to Corder in the first place? Conversely, if responsibility for Corder's injuries were properly placed where it belongs, *i.e.,* on her own UM carrier, that insurer could pursue its statutory right of subrogation against the tortfeasor. KRS 304.20–020(4); *Wine v. Globe American Cas. Co.,* Ky., 917 S.W.2d 558, 562 (1996).

The public policy expressed in KRS 304.39–080(5) and KRS 304.99–060 is that "every *owner of a motor vehicle* . . . shall continuously provide" the minimum liability coverage required by KRS 304.39–110(1)(a). (Emphasis added.) Likewise, KRS 304.20–020(1) affords any liability policyholder the right and opportunity to protect himself or herself against personal injury caused by an uninsured motorist.[9] These statutes place the responsibility for providing minimum limits protection against injuries caused in vehicular accidents on the owners of motor vehicles, not on insurance companies. The owner is required to provide such coverage, and our statutes forbid him from doing so by engaging in insurance fraud. In the absence of a "frozen liability" statute, there is no expressed public policy in Kentucky requiring an insurance company, whose coverage was obtained by fraud or material misrepresentation, to remain liable for payment of that coverage just because the covered event occurred before the fraud or misrepresentation was discovered. In fact, the enactment of the rescission stat-ute, KRS 304.14–110, and the repeal of the former "frozen liability" statute, KRS 187.490(6)(a), irrefutably prove that the public policy of this Commonwealth is precisely to the contrary. The law should be so certified and *National Ins. Ass'n v.. Peach, supra,* should be overruled.

JOHNSTONE, J., joins this dissenting opinion.

9. The policyholder can protect against property damage caused by an uninsured motorist by procuring collision coverage for his or her vehicle.