RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0405P (6th Cir.)
File Name: 02a0405p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

AMERICAN HOME ASSURANCE
COMPANY,
　　　　　*Plaintiff-Appellee,*

　　　*v.*

FRANK M. HUGHES; SHEILA
W. HUGHES,
　　　　　*Defendants-Appellants.*

No. 00-6733

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 99-00419—Henry R. Wilhoit, Jr., District Judge.

Argued: June 11, 2002

Decided and Filed: November 21, 2002

Before: BOGGS, SILER, and MOORE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Lowell E. Spencer, ED SPENCER'S LAW
OFFICE, Paintsville, Kentucky, for Appellants. Todd S.
Page, STOLL, KEENON & PARK, Lexington, Kentucky, for
Appellee. **ON BRIEF:** Lowell E. Spencer, ED SPENCER'S
LAW OFFICE, Paintsville, Kentucky, for Appellants.

1

Todd S. Page, STOLL, KEENON & PARK, Lexington, Kentucky, for Appellee.

———————————

## OPINION

———————————

SILER, Circuit Judge.  Defendants Frank M. Hughes and Sheila W. Hughes appeal the district court's grant of summary judgment in favor of plaintiff American Home Assurance Company ("American"), in a dispute regarding American's maximum liability under an uninsured motorist insurance policy where the tortfeasor carried some liability insurance but less than the statutory amount required under the Kentucky Motor Vehicle Reparations Act.  For the reasons set forth below, we reverse and remand.

### Background

At all relevant times, American provided automobile liability insurance coverage to the Hugheses on six separate motor vehicles, each with uninsured motorist coverage in the amount of $100,000.00 per person and $300,000.00 per accident.  It is undisputed that the Hugheses had no underinsurance policy in effect at any time relevant hereto.

In 1999, Sheila Hughes was involved in a motor vehicle accident with a third party in Florida, which resulted in serious and permanent injuries to her.  Mrs. Hughes was totally without fault in causing or contributing to this accident.  The third party, a resident of Florida, maintained automobile liability insurance coverage with limits of $10,000.00 per person and $20,000.00 per accident, which was the minimum amount of coverage required by Florida

For the foregoing reasons, the district court's grant of summary judgment to American is REVERSED and the case is REMANDED for entry of judgment in conformity with this opinion.

*Allstate Ins. Co.*, 34 A.D.2d 265 (N.Y. App. Div. 1970) (same); *Stevens v. American Serv. Mut. Ins. Co.*, 234 A.2d 305 (D.C. 1967) (same). It appears that in many, if not all, of these cases, the insured had purchased only the minimum amount of uninsured motorist coverage. Thus, these cases do not consider the availability of additional coverage when determining the appropriate recovery.

In *Vigneault v. Travelers Ins. Co.*, 382 A.2d 910 (N.H. 1978), the New Hampshire Supreme Court addressed precisely the same issue now before this court on appeal. The plaintiff, a New Hampshire resident, was injured in an accident when her automobile collided with another driven by a resident of Massachusetts, carrying liability insurance below the statutory minimum required under New Hampshire law. *See id.* at 76-77. The court held that "once a victim is injured by a motorist who falls within the definition of an uninsured motorist, the proper figure to which one should look to determine maximum recovery is the amount of coverage purchased." *Id*. at 914.

We agree with the holding in *Vigneault* and conclude that the maximum recovery in this case is governed solely by the amount of coverage purchased by the Hugheses. Accordingly, based on the contractual agreement in the insurance policy, American's maximum liability is $100,000 per vehicle or $600,000 total less the tortfeasor's policy limit of $10,000 per policy, resulting in a maximum liability of $540,000.[6]

---

[6]The district court concluded that under Kentucky law it is well established that uninsured motorist coverage is a personal type of insurance and, as such, multiple policies may be stacked. Neither party disputes on appeal that the coverage on each of the six vehicles owned by the Hughes should be stacked.

law[1] but $15,000.00 below the minimum coverage required in Kentucky.[2]

A declaratory judgment action was filed by American against the Hugheses in response to a dispute regarding American's maximum liability under the uninsured motorist insurance policy as a result of the accident in Florida. American asked the district court to declare that it was obligated to pay a maximum of $15,000.00, which represents the amount of coverage required to make the tortfeasor's automobile liability coverage equal to the mandatory minimum for bodily injury liability required under Kentucky law. In the alternative, American asserted that if stacking was permitted, it was obligated to pay the maximum sum of $15,000.00 for each of the six vehicles insured under the Hugheses' policy, or the maximum sum of $90,000.00. In their answer, the Hugheses asked the court to declare that American's maximum liability after stacking the $100,000.00 of uninsured motorist coverage for each of their six vehicles was $600,000.00. In the alternative, the Hugheses asked for a judgment in the sum of $590,000.00, the difference between the $600,000.00 of stacked coverage and the tortfeasor's $10,000.00 of coverage; or $540,000.00, arrived at by stacking $90,000.00, which is the difference between the $100,000.00 coverage and the tortfeasor's $10,000.00 coverage, for each of the six vehicles.

---

[1]*See* Fla. Stat. ch. 324.021.

[2]Pursuant to Ky. Rev. Stat. § 304.20-020(1), uninsured motorist coverage is a mandatory component of Kentucky automobile insurance unless expressly rejected by the insured.

Pursuant to Ky. Rev. Stat. § 304.39-110(1)(a), insureds satisfy the mandatory requirement by procuring either split limits liability coverage of not less than $25,000.00 for all damages arising out of bodily injury sustained by any one person, and not less than $50,000.00 for all damages arising out of bodily injury sustained by all persons injured as a result of any one accident; or, alternatively, by procuring single limits liability coverage of not less than $60,000.00 for all bodily injury and property damages as a result of any one accident.

During the proceedings before the district court, the parties agreed that there were no genuine issues of material fact. The district court found that American's maximum liability was $90,000.00, which represents a payment of $15,000.00 in uninsured motorist coverage for each of the six vehicles insured under the Hugheses' policy.

## Standard of Review

We review a grant of summary judgment *de novo*. *See Chao v. Hall Holding Co., Inc.* , 285 F.3d 415, 424 (6th Cir. 2002). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A district court's interpretation of state law is also governed by the *de novo* standard on appeal. *See Ferro Corp. v. Garrison Ind., Inc.*, 142 F.3d 926, 931 (6th Cir. 1998).[3]

---

[3]American asserts that when summary judgment is based upon a district court's interpretation of state law this court should give considerable weight to that decision. *See, e.g., Wright v. Holbrook*, 794 F.2d 1152, 1155 (6th Cir. 1986) ("[I]n the absence of reported state decisions on the precise issue involved, this court . . . gives considerable weight to the district judge's interpretation of state law. Accordingly, if a federal district judge has reached a permissible conclusion upon a question of local law, the Court of Appeals should not reverse even though it may think the law should be otherwise.")(internal quotation marks and citations omitted).

This court formerly gave some deference to the state law interpretations of district courts sitting in diversity but the Supreme Court has ruled that such deference is inappropriate. *See Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991) ("We conclude that a court of appeals should review *de novo* a district court's determination of state law.").

the judgment "to the extent of the policy limits on the vehicle of the party recovering [the judgment] less the amount paid by the liability insurer of the party recovered against," *regardless of how the policy limits of the party recovered against compare with the statutory minimum limits.*

Every Kentucky policyholder *obtains the relatively modest uninsured/underinsured coverage* described in Ky. Rev. Stat. 304.20-020 unless he opts out of such coverage by rejecting it in writing.

(emphasis added).

As discussed by this court in *Roy*, Ky. Rev. Stat. § 304.39-320 contemplates payment regardless of the tortfeasor's policy limits. Additionally, this statute was intended to provide coverage beyond the relatively modest uninsured/underinsured coverage mandated in Ky. Rev. Stat. § 304.20-020. American provided a policy to the Hughes which had uninsured motorist liability limits well beyond the modest coverage mandated by Kentucky law. There is nothing in this statutory scheme that would lead one to believe that the Kentucky legislature intended that an insured's recovery under an uninsured motorist policy would be automatically capped at $25,000.00, regardless of the policy limits negotiated and paid for by the insured.

American urges this court to follow decisions from various other jurisdictions that hold that an uninsured motorist statute allows an injured party to recover the difference between the torfeasor's liability limits and the statutory minimum. *See, e.g., Cook v. Pedigo*, 714 S.W.2d 949, 952 (Mo. Ct. App. 1986) ("[W]e hold that an injured motorist may recover under his uninsured motorist coverage if his injury is caused by an underinsured motorist. This recovery is limited to the difference between the torfeasor's liability insurance and the minimum liability requirements under the Safety Responsibility Law, § 303.030.5); *Emery v. State Farm Mut. Auto. Ins. Co.*, 239 N.W.2d 798 (Neb. 1976) (same); *Neals v.*

full benefit of their bargain only if the tortfeasor carried no liability insurance at the time of the accident. If the tortfeasor carried insurance of $1,000.00, $500.00 or even $1.00, although the uninsured motorist coverage is triggered, the Hugheses' recovery would be capped by the $25,000.00 minimum liability coverage requirement under the Kentucky Motor Vehicle Reparations Act. Such a result is problematic. We find, based on the terms of the uninsured motorist policy, that the Hugheses should be able to take advantage of the higher limits of coverage, for which they have, after all, paid the premiums.

American argues that the Kentucky legislature contemplated just such an unfair result when it enacted Ky. Rev. Stat. § 304.39-320, so as to provide underinsured motorist coverage for motorists involved in accidents with tortfearsors who carried less liability coverage than needed to compensate them for their injuries. Because the Hugheses did not elect to procure the more expansive underinsured motorists coverage, American contends that they are properly limited to a $15,000.00 recovery per vehicle under the circumstances of this case. In *Roy v. State Farm Mut. Auto. Ins. Co.*, 954 F.2d 392, 397 (6th Cir. 1992) (applying Kentucky law), this court stated:

> [C]overage whereby a policyholder's own insurance company promises to pay him for damages caused by a vehicle insured for less than the statutory minimum of $25,000/$50,000 is not the only type of "underinsured" coverage available in Kentucky. Ky. Rev. Stat. 304.39-320, captioned "Underinsured motorist coverage," gives the Kentucky policyholder the option of buying coverage that obligates the policyholder's own company to make payment on an unsatisfied judgment recovered by the policyholder *against the owner of a vehicle that may be insured for more than $25,000/$50,000*, but that is not insured for the full amount of the judgment. Coverage purchased under Ky. Rev. Stat. 304.39-320 obligates the policyholder's own insurance carrier to make payment on

### Discussion

The parties do not dispute that the tortfeasor's vehicle which struck Mrs. Hughes was an "uninsured motor vehicle" pursuant to Ky. Rev. Stat. § 304.20-020(2)[4] and the terms of the Hugheses' policy,[5] in that the tortfeasor maintained liability coverage less than the minimum limits mandated under Kentucky law. The Hugheses object to the district court's interpretation of Kentucky law concerning the scope of coverage under their uninsured motorist insurance policy purchased from American.

The issue relating to the scope of coverage under American's policy with the Hughes, as acknowledged by the district court, is a question of first impression under Kentucky law. Absent controlling precedent, we must use our "best judgment as to how the [Kentucky] Supreme Court would rule if faced with the same case." *Jim White Agency Co. v. Nissan Motor Corp.*, 126 F.3d 832, 835 (6th Cir. 1997). The district court relied primarily on the Kentucky Supreme Court's balancing approach as illustrated in *Progressive N. Ins. Co. v. Corder*, 15 S.W.3d 381 (Ky. 2000), to answer the coverage issue presented in this case. The injured third party in *Corder* sought to recover the insured's policy limits of

---

[4] Ky. Rev. Stat. § 304.20-020(2) provides in pertinent part: "the term 'uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, be deemed to include . . . an insured motor vehicle with respect to which the amounts provided, under the bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such motor vehicle, are less than the limits described in KRS 304.39-110."

[5] The Hugheses' policy defined "uninsured motor vehicle" to include a land motor vehicle "to which a bodily injury bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which 'your covered auto' is principally garaged."

$250,000.00, while the insurer sought to limit recovery to the minimum statutory amount. The court ruled:

> Although Corder must be allowed to recover damages under the [insured's] policy, she may recover only up to the minimum amount of liability coverage required by the MVRA. The MVRA is a self-contained Act, and its provisions must be read consistently. Thus, since the public policy behind the Act governs the availability of recovery, it also must govern the amount recoverable. KRS 304.39-110 sets forth the minimum sums. The public policy expressed in the Act is that every victim of a motor vehicle accident will be able to recover the statutory minimum sum towards satisfaction of any judgment obtained. No public policy would be advanced by enforcing contractual terms that exceed the required coverage. In so holding, the competing interests of the insurance company and the public policy of this Commonwealth are equitably balanced.
>
> In summary, where loss must be borne by an innocent third party or by an insurance company which has written a policy pursuant to a compulsory insurance statute and accepted a premium therefor, it should be the insurance company that bears the loss up to the minimum statutory limits. Whether a particular injured third party has or has not a policy of uninsured motorist or underinsured motorist coverage is inconsequential. Our concern here is with the relationship between the injured third party, the negligent defendant, and the insurance company which provides indemnity for the claim.

*Id*. at 384.

The district court noted that although the coverage issue in *Corder* was not precisely the same as the case at bar, it fairly expressed the Kentucky Supreme Court's interpretation of Kentucky insurance law. Accordingly, the court adopted the balancing approach in *Corder* to declare that American's maximum potential liability was $15,000.00 on any single

vehicle--representing the difference between the tortfeasor's policy limits and Kentucky's minimum required liability coverage.

The district court's reliance on *Corder* was erroneous, for the Kentucky Supreme Court in that case was balancing the interests of an innocent third party and an insurance company. It is clear to us that the contractual terms in American's policy govern the resolution of this issue between American and the Hugheses and, therefore, the court did not need to resort to an equitable balancing of the parties' interests.

The matter for consideration in this case is a purely contractual issue between the insurer and its insured which should not be disturbed under the guise of interpretation. "[The Supreme Court of Kentucky has] noted on several past occasions that in enacting KRS 304.20-020, the General Assembly did not presume to write an uninsured motorist policy, but merely gave a general outline of the coverage required, the legislature recognizing that the limits and terms of the statute's general outline of required coverage would of necessity be specifically defined by reasonable 'terms and conditions' in the various insurance contracts." *State Farm Mut. Auto. Ins. Co. v. Christian*, 555 S.W.2d 571, 572-73 (Ky. 1977) (citations omitted). "It is a generally held rule that clear provisions in insurance contracts will be upheld if not violative of public policy or statute." *Windham v. Cunningham*, 902 S.W.2d 838, 841 (Ky. Ct. App. 1995).

Under the terms of its uninsured motorist policy, American promised to provide the enumerated coverage for "compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle.'" When the Hugheses purchased additional coverage from American beyond the minimum required under Kentucky law from American, they reasonably expected, based on the terms of the contract, to be protected against uninsured motorists up to the amount for which they paid. Following the district court's ruling, the Hugheses receive the